**ROBERTSON v. CORWIN, Collector of United States Internal Revenue.**

District Court, E. D. New York.
June 16, 1933.

Raymond M. Tierney, of New York City (Stephen P. Nash and Donald D. Bartholomew, both of New York City, of counsel), for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Alfred D. Smith, Asst. U. S. Atty., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Ralph E. Updike, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for defendant.

BYERS, District Judge.

This is an action at law·to recover from the Collector of Internal Revenue of this district, $53.69, representing a tax of $47.56 with $6.13 interest said to have been improperly assessed in connection with the plaintiff's income tax return for 1928, as guardian of her minor son, Anthony N. Duke.

The return asserted as a deduction "authorized by law" (line 16) the sum of $1,-942.68, which embraced an item of $777.00 described as "clerical help, etc."

That item was disallowed, and the tax assessed in connection therewith presents the pending question.

The pleadings raise no issue of fact, but a motion by plaintiff for judgment on the pleadings was denied when made in advance of trial so that the plaintiff might have opportunity "to identify, in the legal sense, the expenditures here involved with those examined" in Commissioner of Internal Revenue v. Wurts-Dundas (C. C. A.) 54 F.(2d) 515.

It now becomes necessary to conclude whether, as the result of the trial, the plaintiff has succeeded in so doing.

The ward's income for the year in question was $22,831.97 according to the return, derived as to $22,279.33 from trust companies as trustees, and as to $552.64 from interest on bank balances and mortgage certificates.

There was actually received a further sum not included in the return, but it was shown at the trial that this was tax-paid at the source.

Under a decree of the Surrogate's Court of New York County, the guardian is permitted to expend the infant's income for his support and education to the extent of $28,800.00 per year, in order that he may maintain the scale of living which is appropriate to one of his affluence. This is the provision of the decree of May 14, 1930, judicially settling the guardian's intermediate account covering the period from December 1, 1923, to December 31, 1928, inclusive. The authorization above referred to is prospective in operation, to commence January 1, 1930.

The judicial settlement so obtained, sanctioned the expenditures which had been made by the guardian during the period embraced in the account, including those here involved, and examination of the annual inventory and account filed in the Surrogate's Court at the close of each calendar year reveals that for the years 1926, 1927 and 1928, the guardian applied a portion of her son's income to the household expenses of the family of which he was a member, his step-father, Thomas Markoe Robertson, being·the head.

The testimony is that the ward during the year 1928 was chargeable with one-quarter

of such expenses, which involve the maintenance of homes in Westbury and Southampton as well as the attendant charges for motoring, yachting and the like. Establishing his share of those disbursements gave rise to the disputed item, which represents clerical services; namely:

Share of Miss Cummins' wages ................... $559.00
Share of Miss Williams' wages ................... 143.00
_____
$702.00
H. A. Hall, accountant's services ................... $22.50
52.50 75.00
_____
$777.00

The latter item involves $52.50 for services in connection with the said intermediate accounting which was filed in the New York County Surrogate's Court in November, 1929, and might well have been embraced in the costs awarded in the final decree therein.

The testimony of Miss Williams alone was offered on this trial, and it is to the effect that she is employed by the ward's step-father, and is the private secretary of the plaintiff. She has entire charge of the latter's bank accounts as guardian. The ward lives with his mother and step-father, and pays one-quarter of all costs of the various establishments and appurtenances, and consequently the bills have to be checked in order to be sure of their accuracy.

These maintenance charges run about $60,-000.00 annually, of which the ward's share is around $15,000.00.

Also she checks the bills that are personal to him, for tuition at school, doctor's charges and the like. She segregates the items, and operates three bank accounts in order to accomplish these purposes. She draws all checks, examines vouchers and receipts, and spends from two to four hours per day in these various duties. As stated, $143.00 was paid in 1928 to this witness.

Nothing was said about Miss Cummins' services, as to whom there is charged nearly four times as much.

The income tax return reveals that the guardian included, in her deduction of $1,-942.68, the sum of $949.25 as commissions, presumably computed according to the New York law, and not questioned by the Collector.

That sum was more than sufficient to pay the disputed item.

The questions of law are: First, was the Collector required to regard the acquiescence of the Surrogate's Court of New York County in these particular charges of the guardian against her son's income as binding upon him? Second, if not, were they ordinary and necessary expenses paid during the taxable year in carrying on the business of the guardianship?

The answer to the first question is in the negative. Holifield v. Commissioner, etc., 7 B. T. A. 1302, which involved payments made from income of minors to defray the expenses of removing a former guardian and an administratrix for incompetence, is not to the contrary.

Here there was no issue made between the special guardian representing the infant, in the accounting proceeding, and the petitioner therein, touching the propriety of these deductions from the ward's income; thus there was no real adjudication by the Surrogate which, under the principles of comity, might be urged as controlling.

More important is the fact that the Surrogate did not purport to construe section 23 of the Revenue Act of 1928 (26 USCA § 2023), which is the duty of this Court, with respect to these matters. It is quite conceivable that the decision herein will not be deemed apposite upon the next settlement of the guardian's accounts in the Surrogate's Court.

The answer to the second question does not involve considering whether there is such a thing as carrying on the business of administering a ward's estate, for such has been recognized for the purposes of the Revenue Act, Commissioner, etc., v. Wurts-Dundas, supra.

Under circumstances that involve preserving the estate, or increasing it, lawyers' bills have been allowed as proper deductions.

Here the guardian was not required to put forth efforts to garner the income, as will be seen from its constituency above stated. Nor was she called upon to preserve or increase the ward's estate during the taxable year. The duties of collection consisted in depositing checks in a bank, a process lying within the capacity of the average person.

The disbursement of the income is one of the things compensated for by the commissions allowed by law. So far as the bills for tuition and other expenditures personal to the ward are concerned, supervision thereof was confided to the guardian—the ward's mother—by the Surrogate's Court. If she

chose to delegate that duty to others, that was a matter of personal convenience to her, rather than such a business expense as the cases have sanctioned for the purposes of income tax deductions.

With reference to the household bills, it will be seen that, however considerable they may be in number and in detail, they represent in effect what the plaintiff's husband and herself present to the guardian as the infant's share of maintaining the family abodes and ménage; they come therefore to the guardian with the presumption of regularity and authenticity inherent in their sponsorship. It would be a strange reasoning that would lead to the conclusion that the ward's income should be exempt in part from the tax in question in order that he may be made secure against mistaken charges presented by his mother and his step-father.

If checking these various bills is to be regarded as part of the cost of maintaining the establishments, on the theory that elaborate domestic administration involves clerical services, the answer would be that they may be presumed to have been absorbed in the general charge of 25% of rent and household expense, charged to the ward for the year 1928 as stated.

These reflections induce the belief that the Collector was right and that the items in question represent expenditures made by the guardian for her own personal convenience, rather than necessary deductions in connection with the business of her guardianship, and that judgment must be awarded to the defendant, with costs.